**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IMA North America, Inc., ) | No. CV-06-0344-PHX-LOA |
| )  Plaintiff, ) | **ORDER** |
| ) vs. ) | |
| ) Marlyn Nutraceuticals, Inc., d/b/a ) Naturally Vitamins, ) | |
| ) Defendant. ) | |

      This matter comes before the Court on Defendant MNI's Motion for Summary Judgment and on Plaintiff IMA's Amended Motion for Summary Judgment on Defendant's Counterclaim, both of which were timely filed. (dockets # 77, # 80) Because the parties' requests for oral argument would not aid the court's decisional process, both requests are denied. *Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir.1999) (explaining that if the parties provided the district court with complete memoranda of the law and evidence in support of their positions, ordinarily oral argument would not be required).

      After considering all the pleadings submitted on these motions and the relevant case law, the Court concludes that since genuine issues of material fact exist for jury determination, neither party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c).

**I. Jurisdiction**

      This Court has subject-matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332

1  as the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and the
2  adverse parties are of diverse citizenship. (docket # 19 at 4) Venue is also proper in this Court
3  pursuant to 28 U.S.C. § 1391(a). *Id.* All parties have previously consented in writing to
4  magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c)(1). (docket # 12 and # 16).

5  **II. Background**

6        Plaintiff IMA North America, Inc. ("Plaintiff" or "IMA"), the vendor of a
7  Comprima 230 tablet press ("press") manufactured in Italy, brings this payment deficiency
8  action against Defendant Marlyn Nutraceuticals, Inc., d/b/a Naturally Vitamins ("Defendant"
9  or "MNI"), the purchaser of the press and a manufacturer of vitamins and other tablets for sale.
10 The parties agree that beginning on April 30, 2004, IMA submitted a faxed purchase order,
11 dated February 19, 2004, per quotation # 11000052103 to MNI by which MNI agreed to: (1)
12 purchase the subject press from IMA for $585,000 (including delivery) plus a trade-in of an
13 S250 tablet press IMA had sold to MNI in 2000; (2) pay an agreed 40 % of the purchase price
14 ($234,000) as a down payment which MNI did; and (3) "pay the full amount upon [the press']
15 arrival" at MNI's warehouse in Phoenix. (docket # 1 at ¶¶ 6-7; Exhibit "Exh" 1; docket # 8, ¶¶
16 7-8) IMA alleges claims of breach of contract and unjust enrichment for MNI's failure to pay
17 the balance due of $351,000 in principal for the purchase of the press, plus past and accruing
18 interest, costs and attorneys' fees. (docket # 19 at 1-2)

19       Defendant MNI denies any wrongdoing. It alleges that IMA proposed to sell, and
20 MNI intended to buy, a new and unused press. MNI alleges that it paid IMA the initial payment
21 as agreed of $234,000 prior to the press' delivery to MNI in Phoenix on or about June 5, 2005.
22 Shortly after its delivery, however, MNI claims it discovered that the press was not the new
23 press it agreed to purchase as evidenced by rust, powder residue on the press and the age of its
24 parts. MNI alleges that "[a]t no time did IMA ever disclose to [MNI] that the [press] had been
25 manufactured in 1999, that it contained aged parts that were tested in 1999, that it had been
26 displayed and used at a tradeshow in Germany in 2000, or that it was at least four (4) years old.
27 . . [ and that MNI] was led to believe that it was purchasing a new [press]." (docket # 77 at 4)
28 MNI counterclaims for breach of contract damages and rescission of the purchase contract.

- 2 -

1 IMA contends that the press it sold to MNI was, in fact, a new machine, not a
2 used one; that it was not used prior to its sale; that the press was manufactured in 2004, not
3 1999; and that it was not "used" as a demonstrator at a trade show in Germany or anywhere else
4 prior to its sale to MNI. (Plaintiff's Controverting Statement of Facts ("PCSOF"), ¶¶ 3(2), 5(3),
5 6(3), 11; docket # 89)  IMA acknowledges, however, that the press was "partially completed"
6 without "any tooling" when it was displayed at the trade show in 2000 and "at most, the power
7 to the partially completed [press] was turned on for a total of 10 hours at the 2000 [German]
8 trade show." *Id*. at ¶ 11. Assuming arguendo that the press was not new upon delivery, IMA
9 argues that the parties' relevant purchase contract and written quotes exchanged between the
10 parties at the time of, and prior to, the sale make no reference to the sale and delivery by IMA
11 of a new, never used press. (PCSOF, ¶¶ 4 and 8)

12 Defendant's Motion for Summary Judgment, docket # 77, seeks summary
13 judgment on both IMA's claims alleged in its Complaint and on MNI's Counterclaims for
14 breach of contract and rescission. To support its position, MNI argues that IMA's quote for the
15 press "indicates that the Tablet Press is a new machine," citing the language: "The machine will
16 not be manufactured according to the directives of protection from explosion proof degree,
17 unless a specific request from the customer with relevant extra costs." (docket # 77 at 4) Then
18 MNI argues that "[n]owhere in the Quote is there any reference or indication that the Tablet
19 Press is anything other than a **new** Tablet Press." *Id*. (emphasis in original)  MNI also claims
20 that upon delivery the press "was seen with rust in the drive shaft and powder in the machine;"
21 "at least two of the parts indicated they had been tested in January and February, 1999 . . .
22 [despite] an identifying label indicating it had been constructed/manufactured in 2004. . . ." *Id*.
23 at 5. MNI seeks damages of $9,000.00 which is the difference between what MNI paid
24 ($234,000.00) for the press and its fair market value ($225,000.00) per MNI's expert witness.
25 *Id*. at 6.  MNI also seeks summary judgment on IMA's claim for unjust enrichment because
26 such an equitable claim is barred as a matter of law "since there is a valid express contract
27 which covers the same subject matter, i.e., the purchase of the Tablet Press." *Id*.

28 In its Amended Motion for Summary Judgment on Defendant's Counterclaim,

- 3 -

1  IMA argues it is entitled to summary judgment on MNI's rescission claim as a matter of law for
2  four separate and independent reasons. (docket # 80 and # 90) First, IMA claims MNI has
3  elected to affirm the contract as its remedy by seeking summary judgment on its counterclaim
4  for damages. Second, IMA asserts that MNI affirmed the agreement by, among other things (i)
5  demanding that plaintiff replace the subject press with a new Comprima press, (ii) requiring
6  plaintiff to install the press, (iii) requiring IMA to train MNI's employees for use of the press,
7  (iv) requiring plaintiff to perform warranty work on the press, and (v) using the press for profit
8  for more than three years after its delivery. Third, IMA also asserts that MNI waived any right
9  it had to rescind the purchase agreement by continuing to use the press for over three years since
10 its delivery. Finally, IMA contends that because the Court cannot return IMA or the parties to
11 the status quo prior to the sale, MNI's rescission claim must be dismissed.

**II.  Legal Standard**

A district court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994).  Substantive law determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Jesinger*, 24 F.3d. at 1130.  In addition, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.  The dispute must be genuine, that is, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323-24.  Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id*. at 322; *Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994).  The moving party need not disprove matters on which the opponent has the burden of proof at trial.  *Celotex*, 477 U.S. at

323.

The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but. . . must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). *Brinson v. Lind Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50. However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his [or her] favor." *Id*. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

Whatever facts which may establish a genuine issue of fact must *both* be in the district court's file and set forth in the response. *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1029 (9th Cir. 2001). The trial court

> may determine whether there is a genuine issue of fact, on summary judgment, based on the papers submitted on the motion and such other papers as may be on file and specifically referred to and facts therein set forth in the motion papers. Though the court has discretion in appropriate circumstances to consider other materials, it need not do so. The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.

*Id.* at 1031.

**III. Applicable Law**

**A. Choice of Law**

A federal court sitting in diversity must apply the choice-of-law rules of the state in which it sits. *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Thus, this Court must apply Arizona's choice-of-law rules. Arizona courts apply the Restatement to determine the applicable law in a contract action. *Swanson v. The Image Bank, Inc.*, 206 Ariz. 264, 77 P.3d 439, 441 (2003). The parties' contract does not contain an explicit choice of law provision, so the contractual rights and duties of the parties are governed by the law of the state

1 having "the most significant relationship to the parties and the transaction." *Cardon v. Cotton*
2 *Lane Holdings, Inc.*, 173 Ariz. 203, 841 P.2d 198, 202 (1992) (citing Restatement (Second)
3 Conflict of Laws § 188 (1971)). Both parties cite Arizona law as controlling. Neither party
4 argues that non-Arizona law applies. IMA is a Connecticut corporation with its principal place
5 of business in Pennsylvania. (docket # 19 at 4)  IMA also conducted business in Arizona by
6 faxing its purchase order to Arizona and y selling and delivering the press in Arizona. MNI is
7 an Arizona corporation with its principal place of business in Arizona. *Id*. The subject purchase
8 contract was partially negotiated from, and accepted in, Arizona. Moreover, the parties clearly
9 contemplated performance, services to, and delivery of, the press to Arizona. Restatement
10 (Second) Conflict of Laws § 188 (stating that "place of contracting" is relevant factor and "the
11 place of contracting is the place where occurred the last act necessary . . . to give the contract
12 binding effect" ). Therefore, the Court finds that Arizona has the most significant relationship
13 to the parties and the contract and will apply Arizona law.

**B. Arizona Law on Contracts**

15 It is axiomatic that when a party agrees to perform in a certain manner
16 upon adequate consideration and fails to keep the agreement, that party is liable to the
17 performing party for any damages sustained as a result of his failure to perform. *Graham v.*
18 *Asbury*, 112 Ariz. 184, 540 P.2d 656, 657 (1975). In an action for breach of contract, the
19 plaintiff has the burden of proving the existence of a contract, its breach and the resulting
20 damages. *Clark v. Compania Ganadera de Cananea, S.A.*, 95 Ariz. 90, 387 P.2d 235 (1963).
21 The terms of the contract must be established with sufficient specificity that the obligations
22 involved may be ascertained. *Savoca Masonry Company, Inc. v. Homes and Son*
23 *Construction Company, Inc.*, 112 Ariz. 392, 542 P.2d 817, 819 (1975). "The terms of a
24 contract may be expressly stated or may be inferred from the conduct of the parties."
25 *Wagenseller v. Scottsdale Mem. Hosp.*, 147 Ariz. 370, 381, 710 P.2d 1025, 1036 (1985).
26 "The general rule is that the determination whether in a particular case a promise should be
27 implied in fact is a question of fact. Where reasonable minds may draw different conclusions
28 or inferences from undisputed evidentiary facts, a question of fact is presented." *Id*. at 1038

1  (citations omitted). Whether a party has breached a contract and whether that breach is
2  material are questions of fact for the trier of fact. *Jeski v. American Express Co.*, 147 Ariz.
3  19, 22, 708 P.2d 110, 113 (Ariz. App. Ct. 1985); *FDIC v. Air Fla. Sys., Inc.* 822 F.2d 833,
4  840 (9th Cir. 1987).

5  In Arizona, "[u]pon the breach of a contract, the party seeking relief has the
6  choice of three remedies: rescind the contract, refuse to treat the breach as a termination of
7  the contract and request that the court compel performance under the contract, or consider
8  the breach to be a termination of the contract and request damages resulting from the
9  breach." *West Pinal Family Health Center, Inc. v. McBryde*, 162 Ariz. 546, 548, 785 P.2d
10 66, 68 (Ariz. App. Ct. 1989) (citations omitted). "Any one or more of these remedies may be
11 sought in the complaint, and the party may wait until trial before electing the remedy to
12 pursue." *Id*.

13 **C. Unjust Enrichment**

14 Under Arizona law, the doctrine of unjust enrichment is a "flexible, equitable
15 remedy
16 available whenever the court finds that 'the defendant . . . is obliged by the ties of natural
17 justice and equity' to make compensation for the benefits received." *Arnold & Assocs., Inc.*
18 *v. Misys Healthcare Systems*, 275 F.Supp.2d 1013, 1024 (D. Ariz. 2003) (quoting
19 *Murdock-Bryant Const., Inc. v. Pearson*, 146 Ariz. 48, 53, 703 P.2d 1197, 1202
20 (Ariz.1985)). "In Arizona, five elements must be proved to make a case of unjust
21 enrichment: (1) an enrichment; (2) an impoverishment; (3) a connection between the
22 enrichment and the impoverishment; (4) absence of justification for the enrichment and the
23 impoverishment; and (5) an absence of a remedy provided by law." *Community Guardian*
24 *Bank v. Hamlin*, 182 Ariz. 627, 630 898 P.2d 1005, 1008 (Ariz. App. Ct. 1995). An unjust
25 enrichment claim, however, is barred when the plaintiff has *received* the benefit of its
26 bargain. *US Life Title Co. of Arizona v. Gutkin*, 152 Ariz. 349, 732 P.2d 579, 585 (Ariz. Ct.
27 App.1986) (emphasis added) (rejecting plaintiff's unjust enrichment claim where it has
28 already received the quitclaim deed for which it had bargained); *Brooks v. Valley Nat. Bank*,

- 7 -

113 Ariz. 169, 548 P.2d 1166, 1171 (Ariz. 1976) (holding that a party is not entitled to compensation on grounds of unjust enrichment if the party receives that which it was agreed it would receive by contract). However, "[t]he mere existence of a contract governing the dispute does not automatically invalidate an unjust enrichment alternative theory of recovery." *Arnold*, 275 F.Supp. 2d at 1030 (citing *Adelman v. Christy*, 90 F.Supp. 2d 1034, 1045 (D. Ariz.2000) (applying Arizona law). If the plaintiff never received the benefit of the contractual bargain, the plaintiff may pursue a claim for restitution. *Adelman*, 90 F.Supp.2d at 1045; USLife Title Co., 732 P.2d at 585 (criticizing the notion that the existence of a contract always bars unjust enrichment claims); Restatement of Restitution § 40 cmt. c (1937) (when an agreement "is not enforceable as a contract, ... restitution for what has been performed is required to prevent unjust enrichment"). In other words, unjust enrichment is warranted when the plaintiff has conferred a benefit upon the defendant in reliance upon an agreement which is unenforceable.

Mindful of the foregoing controlling legal standard and applicable substantive law, the Court will consider the parties' dispositive motions.

**IV. Discussion**

The Court concludes that disputed issues of fact exist for resolution by a jury on all breach of contract and equitable remedy claims. Whether the press was new or used when sold; whether the parties intended to sell or buy a new press, a used press or the particular press that was delivered; whether the press that was delivered to MNI, if used, resulted in a material breach of the parties' purchase agreement; the existence of a unilateral or mutual mistake of material fact; and the damages, if any, MNI may have sustained for a breach by IMA are not appropriate issues for the Court to resolve as a matter of law. Each party has presented sufficient admissible evidence from which a reasonable jury could return a verdict for that party.

On IMA's request for summary judgment, it is undisputed that in either federal or Arizona court, a party may plead in the alternative inconsistent theories of liability or requests for recovery. Rule 8(a) and (e), FED.R.CIV.P.  No technical forms of pleading are required. *Id*. A party may set forth "two or more statements of a claim or defenses

alternately or hypothetically, either in one count or defense or in separate counts or defenses." *Id*. at 8(e)(2). This is true "regardless of the consistency and whether based on legal, equitable, or maritime grounds." *Id*.  Moreover, under Arizona law, the general rule is that a party cannot be forced to elect in advance at his peril what theory or remedy he will proceed upon until the conclusion of the trial. *Edward Greenband Enterprises of Ariz. v. Pepper*, 112 Ariz. 115, 117, 538 P.2d 389, 391 (Ariz. 1975).

IMA has failed to provide persuasive controlling authority that MNI's moving for summary judgment on its breach of contract claim constitutes an irrevocable election of its remedy, especially when that motion is denied. Moreover, under the disputed facts of this case, whether MNI affirmed or ratified the contract by its conduct, whether MNI's substantial or minimal use of the press for three years for profit constitutes a waiver of its rescission claim, and whether MNI rescinded the contract within a reasonable time are all questions of fact for the jury. *Beauchamp v. Wilson*, 21 Ariz.App. 14, 19, 515 P.2d 41, 46 (Ariz. Ct. App.1973) ("The question of whether a right to rescission has been waived is one of fact for the jury."); *Golembieski v. O'Rielly R.V. Center, Inc*., 147 Ariz. 134, 708 P.2d 1325, 1328 (Ariz. Ct. App.1985) (noting that "[r]easonableness of the time for revocation is a question of fact unique to the circumstances of each case").

There are also too many unanswered and disputed questions of fact (condition of the press; the press' reasonable rental value, amount of press usage by MNI, amount of profits, if any, gained from such usage; value or cost of IMA's services to install, service and train for the usage of the press) for the Court to determine as a matter of law at this time whether the parties may be returned to the *status quo.* Therefore, this issue is also one that must be resolved at trial. See, *Mortensen v. Berzell Investment Company*, 102 Ariz. 348, 429 P.2d 945 (Ariz. 1967) (it is "essential to justify the rescinding of a contract that the rescinding party offer to place the other party in status quo, and this includes the offer to credit the vendors with a reasonable rental value for the time during which the land (a press) was occupied (used) . . . and should have offered to remove the waste material from the land in question." 429 P.2d at 948.

Similarly, IMA's restitution claim may not properly be dismissed at this time as a matter of law. While there does exist a contract between the parties, hypothetically the jury may find that IMA breached the subject contract or that the subject contract is unenforceable but, nevertheless, the value or enrichment MNI received by receipt of the press, its usage over a period of time and/or related services provided by IMA exceed the amount of money and trade-in paid by MNI. MNI's dispositive motion on IMA's unjust enrichment claim will also be denied.

Accordingly,

**IT IS ORDERED** that Defendant MNI's Motion for Summary Judgment, docket # 77, is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff IMA's Motion for Partial Summary Judgment, docket # 80, is **DENIED**.

**IT IS FURTHER ORDERED** that the parties' requests for oral argument are **DENIED**.

**IT IS FURTHER ORDERED** that because the Court denied MNI's Motion for Summary Judgment by considering only admissible evidence, Plaintiff IMA's Objections to Defendant's "Statement of Facts in Support of Its Motion for Summary Judgment," docket # 89, are **OVERRULED** as moot.

DATED this 1st day of February, 2008.

*(signature)*
Lawrence O. Anderson
United States Magistrate Judge