**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IMA North America, Inc., | No. CV-06-344-PHX-LOA |
| Plaintiff/Counterdefendant, | **ORDER TO SHOW CAUSE** |
| vs. | |
| Maryln Nutraceuticals, Inc., d/b/a Naturally Vitamins, | |
| Defendant/Counterclaimant. | |

Under Federal Rule of Civil Procedure 16(e), the final pretrial order controls the subsequent course of the action and the district court may modify the pretrial order "*only to prevent manifest injustice*." Rule 16(e), Fed.R.Civ.P. (emphasis added); *Sousa ex. rel. Will of Sousa v. Unilab Corp Class II*, 252 F.Supp.2d 1046, 1058 (E.D. Cal. 2002), *affirmed by*, 83 Fed. Appx. 954 (9th Cir. 2003) (holding that district court did not abuse its discretion in amending final pretrial order to include limitations defense as disputed legal issue). "The purpose of the final pretrial order is 'to guide the course of the litigation,' and '[o]nce formulated, [it] should not be changed lightly . . . . " *Id*. "District courts have broad discretion to determine the preclusive effect of a final pretrial order on the determination of issues of law and fact at trial." *Id*. (citing *Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 369 (9th Cir. 1985)).

In this case, like *Sousa*, the Court never issued a final pretrial order within the precise meaning of Rule 16. Rather, the Court treated the parties' Joint Pretrial Statement as

1 a final pretrial order because the parties agreed to a trial to the Court.

2 Despite not a single reference to the Uniform Commercial Code ("U.C.C.") in 3 the parties' Joint Pretrial Statement, the parties agreed during the trial itself that the U.C.C. 4 applies to the sale at issue in this case. (docket # 120 and # 121) Article 2 of the U.C.C., 5 A.R.S. § 47-2101 *et seq.*, governs transactions in goods "[u]nless the context otherwise 6 requires . . . ." A.R.S. § 47-2102; *Pacific Am. Leasing v. S.P.E. Bldg. Sys.*, 152 Ariz. 96, 100, 7 730 P.2d 273, 277 (Az. Ct. App. 1986). Because a Comprima 230 tablet press constitutes 8 "goods" within the meaning of A.R.S. § 47-2105(A), its sale in this case is governed by the 9 U.C.C., adopted by the Arizona legislature as A.R.S. § 47-2105(A) (2005) ("'Goods means 10 all things (including specially manufactured goods) which are movable at the time of 11 identification to the contract for sale . . . . "). *Alumaguard Corp. v. Road Safety Products* 12 *Distributing, Inc.*, ___ P.3d ___, 2721152, * 3 (Az. Ct. App., July 8, 2008).

13 Since its adoption in 1977, no Arizona court has directly addressed whether 14 equitable rescission survived Arizona's adoption of the U.C.C.[1] *Valley Nat'l Bank v.* 15 *Flagstaff Dairy*, 116 Ariz. 513, 516, 570 P.2d 200, 203 (Az. App. Ct. 1977). It is clear, 16 however, that every other court which squarely addressed the issue has concluded that the 17 U.C.C. did not expressly codify a buyer's common law right to equitable rescission and, 18 instead, substituted a buyer's right to reject or revoke acceptance with remedies under 19 provisions similar to the remedy of equitable rescission, e.g., U.C.C. § 2.602 (A.R.S. § 47- 20 2602 - a buyer's right to reject goods) and U.C.C. § 2.608 (A.R.S. § 47-2608 - a buyer's right

---

[1] The Arizona Supreme Court recognized early on that a buyer has a remedy of revocation of acceptance under the U.C.C. even though rescission was not pled. *Seekings v. Jimmy GMC of Tucson, Inc.*, 130 Ariz. 596, 602, 638 P.2d 210, 216 (Ariz. 1981) ("[W]e do not find that the disclaimer precludes the remedy of revocation of acceptance . . . Rather, we find that revocation may be available whenever goods sold fail to conform to the seller's representation of the goods if the nonconformity 'substantially impairs' the value of the goods to the buyer.' "); *Berthot v. Security Pacific Bank of Arizona*, 170 Ariz. 318, 823 P.2d 1326 (Az. App. Ct. 1991) (U.C.C. remedy for conversion displaced common-law actions for negligence).

1  to revoke acceptance). *In re Zeta Consumer Products Corp.* (*In re Zeta* ), 291 B.R. 336, 352
2  (Bankr. D. N.J. 2003); *Taylor Inv. Corp. v. Weil*, 169 F.Supp.2d 1046, 1058 (D. Minn. 2001)
3  (The Comments "indicate[] the drafters' intention to replace, or at least recast the remedy of
4  rescission with the remedy of revocation of acceptance under the UCC."); *Calloway v.*
5  *Manion*, 572 F.2d 1033, 1039 (5th Cir. 1978) ("The [U.C.C.] replaces the recision remedy
6  with the concepts of rejection and revocation of acceptance."). In addressing the issue of
7  whether a buyer's right to rescind survived after enactment of the U.C.C., Michigan, Oregon,
8  Texas, New Jersey,  Florida, and Pennsylvania have found that the relief incorporated in the
9  revocation of acceptance provision contained in § 2.608 [A.R.S. 47-2608] of the U.C.C. is
10 intended to provide a buyer with the same relief as the common law remedy of equitable
11 rescission. *Henderson v. Chrysler Corp.*, 191 Mich.App. 337, 477 N.W.2d 505 (1991);
12 *Claxton v. Boothe*, 101 Or.App. 416, 790 P.2d 1201, 1202 (1990) ("We treat plaintiff's
13 rescission claim as an attempted revocation of acceptance under ORS 72.6080."); *Carrow*
14 *v. Bayliner Marine Corp.*, 781 S.W.2d 691, 695 (Tex. App.1989); *Ramirez v. Autosport*, 88
15 N.J. 277, 288, 440 A.2d 1345 (1982); *Peppler v. Kasual Kreations, Inc.*, 416 So.2d 864
16 (Fla.App. 1982); *Lawner v. Engelbach*, 433 Pa. 311, 249 A.2d 295, 315 (1969) ("In
17 situations such as this, the [U.C.C.] has largely abandoned the concept of 'rescission' in favor
18 of the concept of  'revocation of acceptance.' "). "Thus, a buyer must comply with the
19 statutory requirements of § 2.608 [A.R.S. § 47-2608] in order to cancel a contract for the sale
20 of goods."   *In re Zeta*, 291 B.R. at 352.

21          Arizona's adoption of the U.C.C. provides multiple remedies for buyers of
22 alleged nonconforming goods. Initially, a buyer may reject a tender of goods at the outset if
23 those goods "fail in any respect to conform to the contract." A.R.S. § 47-2601. If the buyer
24 accepts the goods, the buyer may revoke his acceptance pursuant to A.R.S. § 47-2608 and
25 recover the contract purchase price or the buyer may elect to sue for damages resulting from
26 the nonconformity of goods pursuant to A.R.S. § 47-2607(C) and § 47-2714. *Preston Motor*
27 *Co. v. Palomares*, 133 Ariz. 245, 650 P.2d 1227 (App.1982). "After giving notice of  breach
28 in compliance with § 47-2607(C), (U.C.C. § 2-607), the buyer may recover damages for his

1  loss 'as determined in any manner which is reasonable.' " *N. Ariz. Gas Serv., Inc. v. Petrolane Transp., Inc.*, 145 Ariz. 467, 478, 702 P.2d 696, 707 (Az. App. Ct. 1984). Arizona Revised Statute § 47-2714 (U.C.C. § 2-714), however, deals with the circumstances in which the buyer has accepted nonconforming goods and the time for rejection has passed. A.R.S. § 47-2714(A); Comment 1 to U.C.C. § 2-714; *Ardus Medical, Inc., Emanuel County Hosp. Authority*, 558 F.Supp.2d 1301, 1313 (S.D.Ga. 2008) ("Although acceptance of goods precludes subsequent *rejection*, a buyer, upon notice to the seller, has a right to revoke acceptance of goods whose nonconformity substantially impairs their value to him.") (emphasis in original). *National Eastern Corp. v. Vegas Fastner MPG*, 2006 WL 758634, * 3-4 (D. Conn. 2006) ("Alternatively, a buyer who has accepted the goods may sue for damages under UCC §§ 2-607(3) and 2-714(1) for losses shown to result from '*any* nonconformity of tender.' ") (emphasis added). "The remedies associated with revocation of acceptance are intended to return the buyer and seller to their presale positions. In general, the buyer is entitled to recovery of the purchase price plus all damages caused by the seller's failure to deliver conforming goods; the seller can recover the goods sold." *Chaurasia v. Gen. Motors Corp.*, 212 Ariz. 18, 25, 126 P.3d 165, 172 (Az. App. Ct. 2006),

Based on the foregoing, rejection or revocation of acceptance of goods in Arizona is governed by A.R.S. §§ 47-2601, 47-2602, 47-2607(B), 47-2608 and 2714. At the end of the trial of this case, Maryln Nutraceuticals, Inc., however, elected the remedy of rescission of the contract and abandoned any claim for damages. The Court ordered each side to provide memoranda of law on different legal issues.

On the Court's own motion,

**IT IS ORDERED** that the parties shall show cause in writing why this Court should not consider Maryln's counterclaim seeking rescission of the subject contract to be one for rejection or revocation of acceptance pursuant to A.R.S. §§ 47-2601, 47-2602, 47-2607(B), 47-2608 and 2714 in order to prevent manifest injustice. Absent a showing of good cause, the parties shall file their responses to this OSC on or before **Friday, November 7, 2008** and optional replies to the adverse party's response by **Friday**, **November 14, 2008**.

- 4 -

1   **IT IS FURTHER ORDERED** that the Court's October 22, 2008 oral order
2   that Defendant/Counterclaimant Maryln provide the Court with a memorandum of law on
3   the issue of whether Arizona's version of the U.C.C. adopted or precluded the remedy of
4   rescission is hereby **VACATED**.

Dated this 27th day of October, 2008.

*Lawrence O. Anderson*
Lawrence O. Anderson
United States Magistrate Judge